UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20133-CR-SEITZ

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

MAURICE DWIGHT MARSHALL,

    Defendant.
_____/

## ORDER DENYING MOTION TO SUPPRESS

THIS MATTER is before the Court on the Government's Objections [DE-56] to the Report and Recommendation (R&R) of the Honorable Magistrate Judge John O'Sullivan recommending that the Defendant Marshall's Motion to Suppress be granted. After a *de novo* review of the record and conducting a supplemental evidentiary hearing on August 13, 2010 at which photographic evidence not provided to the Magistrate Judge was introduced, the Court will affirm the Magistrate Judge in part by adopting all but seven sentences in the last paragraph of his factual findings,[1] and adopting his conclusion of law as to the Investigative Stop section of the R&R. Having made additional factual findings based on the evidence presented at the supplemental hearing, the Court will deny the Motion to Suppress for the reasons discussed below.

Background

When initially considering the Government's objections to the R&R, the Court reviewed the Motion to Suppress [DE-40], the Government's response [DE-45] and supplemental authority [DE-

---

[1] These sentences must be rejected based on the new evidence introduced at the supplemental hearing.

49], the R&R [DE-52], the transcript of the May 24, 2010 evidentiary hearing on the motion [DE-62] and seven of the eight exhibits introduced into evidence. However, this review confirmed that the dispositive legal issue was whether there was probable cause to seize the bag when Detective Philippe did. The Court found the record evidence was insufficient to decide this issue *de novo*. Therefore, the Court noticed a supplemental evidentiary hearing and required the Government to produce the black bag, Exhibit 7,[2] and call Detectives Cooper and Philippe for additional testimony.

After excluding these two witnesses from the courtroom, the Court advised counsel that the two factual issues to address were: (1) what specific facts led Detective Cooper to order the investigatory stop of Defendant Marshall; and (2) what did Detective Philippe observe that caused him to seize the bag when he did. In addition to the witnesses' supplemental testimony, the parties introduced photographs that had been produced during discovery but not introduced at the May 24th evidentiary hearing.[3] It is this additional evidence that requires the Court to reject the factual findings beginning with the sentence: "Detective Philippe took the bag and placed it on the passenger seat" at the bottom of R&R page 6 over onto the top of page 7 through the sentence that reads: "Detective Philippe opened the brown paper bag and saw four clear sandwich bags containing a large quantity of pills." Two newly introduced photographs show what Detective Philippe initially observed. They depict the black bag opened at top and a clearly visible plastic ziplock sandwich bag

---

[2]The Court did not have access to Government's Exhibit 7, the bag seized, because it remained in the Government's possession and there were no photographs of the seized items in the record.

[3]The Government introduced two photographs that Detective Philippe took before moving the black bag from the front passenger seat floor onto the passenger seat. Defendant also introduced a photograph of the black bag and the four ziplock bags of pills after the four were removed from the black bag.

with a large quantity of pills and a piece of paper with the figure "1,000." Because the picture did not show a brown paper bag, the Court asked Detective Philippe to clarify his testimony by drawing the location of the ziplock bags and the brown paper bag inside the seized bag. His drawing is Court Exhibit A.[4]

Supplemental Factual Findings

Having conducted a *de novo* review, the Court finds that the Magistrate Judge's Findings of Fact set out in the R&R beginning on page 2 through the first two sentences of the last paragraph on page 6 are not clearly erroneous.[5] Therefore, the Court will adopt these factual findings as factual findings of this Court. The Court makes the following additional factual findings:

Before the February 9th surveillance, the investigation of the targeted house had resulted in 5 to 10 drug arrests. Detective Cooper was aware of this fact. Thus, the persons observed as having contact with the persons in the house all had drug dealing connections. The purpose of the investigation was to support the application for the search warrant the law enforcement team planned to submit the next day. The Miami-Dade State Attorney requires at least two controlled purchases before it will submit a search warrant application. Based on his experience with similar drug houses,

---

[4]Detective Philippe testified that the pill bags were in the brown paper sack which was rolled down. To better understand his testimony, the Court had him draw the relationship between the paper sack and the pill bags.

[5]The Court will not adopt the next seven sentences in that last paragraph on page 6 that goes over to the top of page 7. Additionally, at the supplemental hearing, Detective Cooper corrected his earlier testimony, at page 85 of DE-62, which is reflected on page 5 of the R&R as to the direction in which the unidentified black male walked. In correcting his testimony, he stated that on February 9th, the unidentified black male initially walked east and then abruptly turned and proceeded west. This is a reversal of the directions about which he testified at the first hearing.

Detective Cooper anticipated that inside they would find only drugs, drug paraphernalia, money, with minimal furnishings and personal effects.

During the February 9th surveillance, the only persons observed speaking with co-defendant Gordon in the front of the house, were the undercover officer, the CI, an unidentified black male who walked behind the wooden fence shortly before the Defendant arrived, and the Defendant. There were no other persons observed walking on that side of the street or approaching the house. Shortly after the unidentified black male walked east and then abruptly walked west, a Dodge Charger pulled into the parking area in front of the house where Ms. Gordon was standing. Detective Cooper testified that the Charger appeared to know where it was going. The right front passenger door quickly opened, and the Defendant got out. He walked up to Ms. Gordon, and said something as he placed an object, which Detective Cooper could not see, into the palm of her hand. Ms. Gordon's hand was cupped. She looked at the object in the palm of her hand, turned, and went into the house. The Defendant remained outside. In less than a minute, she exited the house with a black bag that looked like a backpack or book bag, 15 inches in length. She gave the bag to the Defendant, who took it, and got into the car. The car immediately backed out and drove west. Based on Detective Cooper's drug investigation experience as a narcotics officer, the exchange appeared to be a drug transaction. It definitely was not a social exchange or interaction. The black bag appeared similar to small backpack bags he has observed drug dealers use to transport and conceal drugs and drug proceeds in his seven years as a narcotics K-nine handler. Because of these facts, he gave the order to conduct an investigatory stop.

Detective Philippe was in one of three perimeter cars that followed the Charger as it turned north onto NW 7th Avenue. Almost 15 blocks later, the three cars stopped the Charger by boxing

it in (the lead car immediately in front stopped suddenly, with one immediately behind and one immediately on the driver's side). After the officers removed the two occupants from the Charger, Detective Philippe came around the front of the car to the open front passenger door. He looked inside the car and saw the black bag, Exhibit 7, on the floor of the front passenger seat. The top of the bag was open. Detective Philippe could plainly see a four-inch thick bundle of currency wrapped in a rubber band next to a clear plastic ziplock sandwich bag containing a substantial amount of bluish-white pills. Inside the ziplock pill bag, he saw a rectangular piece of paper with the figure "1,000" handwritten on it. Detective Philippe thought the pills were Ecstasy, a controlled substance.[6] Before moving the bag to the passenger seat, he took two pictures of what he observed.[7] The Detective commented to the Defendant, who was standing behind him, about the substantial bundle of cash he observed next to the pills. The Defendant responded that he sold compact discs ("CDs"). Because the pills appeared to be contraband, Detective Philippe seized the black bag and its contents and ordered the Defendant's arrest.

Conclusions of Law

A warrantless search of an automobile may be conducted if: (1) there is probable cause to believe the vehicle contains contraband or other evidence which is subject to seizure under the law, and (2) exigent circumstances necessitate a search or seizure. *United States v. Talley*, 108 F.3d 277,

---

[6] The pills were later determined to be another controlled substance, Oxycondone.

[7] One picture, Exhibit 12, is a wide perspective showing the bag on the car floor. The other, Exhibit 13, is a close-up of the black bag's open top and its visible contents. At the August 13th hearing, Detective Philippe circled two things in the photos: (1) the paper with the handwritten "1,000" in the top pill bag, and (2) the currency. Defendant introduced, as his Exhibit 1, a picture showing the four ziplock pill bags and the black bag laid out on a flat surface. This photo provides a size comparison of the ziplock pill bags and the black bag.

281 (11th Cir. 1997). Only a minimal showing of exigency is necessary to search a car without a warrant because of the vehicle's ability to move. *United States v. Alexander*, 835 F.2d 1406, 1409-10 (11th Cir. 1988). Probable cause exists when the totality of the facts and circumstances leads a reasonably prudent person to believe that the vehicle contains contraband or evidence of a crime. *Illinois v. Gates*, 462 U.S. 213, 230 (1983).

In this particular case, the officers had reasonable suspicion to conduct an investigatory stop after seeing Ms. Gordon appear to conduct a transaction in a manner consistent with a drug transaction, then go into a known drug dispensing house, where the contents are usually limited to drugs, drug related paraphernalia, and money, and quickly return with a bag similar to the type and size often used to carry and conceal drugs and drug proceeds. After stopping the Charger, the police officers appropriately directed the passenger, Defendant Marshall, to exit the vehicle. *Maryland v. Wilson*, 519 U.S. 408 (1997). When Detective Philippe came around and looked into the open car door, there on the floor next to the Defendant's seat was the black bag that Ms. Gordon gave Defendant. Its top was open, showing a clear plastic ziplock sandwich bag containing a substantial number of bluish-white pills and a rectangular piece of paper with the hand-written figure "1,000" on it, next to the sizable rubber-band wrapped bundle of currency. Detective Philippe thought the pills were the contraband substance, Ecstacy. While he was incorrect as to the true nature of the contraband substance, it nonetheless clearly appeared to be contraband. Because Detective Philippe had lawful access to the view inside the car and the incriminating nature of the object seized was immediately apparent, he had probable cause to seize it without a warrant. *Horton v. California*, 496 U.S. 128, 136-37 (1990); *United States v. Smith*, 459 F.3d 1276, 1291-93 (11th Cir. 2006). Under the plain view doctrine the seizure was lawful. Therefore, based on the adopted factual findings and

legal conclusions plus this Court's additional factual findings after the supplemental hearing and for the reasons discussed above, it is hereby

ORDERED as follows:

(1) The Factual Findings through the first two sentences of the last paragraph on page 6 of the R&R [DE-52] as well as the Legal Conclusions as to the "Investigative Stop" on pages 7 and 8 of the R&R are AFFIRMED and ADOPTED as Factual Findings and Legal Conclusions of this Court. The R&R's remaining Factual Findings and the Legal Conclusions as to the "Search of the Defendant's Bag" are REJECTED based on the new evidence. The rejected findings are replaced by the Factual Findings and Legal Conclusions set forth above in this Order.

(2) Defendant Marshall's Motion to Suppress [DE-40] is DENIED.

DONE AND ORDERED in Miami, Florida, this 24th day of August, 2010.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Magistrate Judge John J. O'Sullivan
Counsel of Record